Deric Lee COON, a Minor by and through his Next Friend, Christopher Coon, Respondent,

v.

AMERICAN COMPRESSED STEEL and William Copeland, Appellant.

No. WD 62289.

Missouri Court of Appeals, Western District.

Jan. 30, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 2004.

Application for Transfer Denied May 25, 2004.

---

Tracy Marie Vetter, Kansas City, for appellant.

Anita Porte Robb, Kansas City, for respondent.

Before JAMES M. SMART, JR., P.J., ROBERT G. ULRICH, and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

American Compressed Steel, Inc. and William Copeland appeal the denial of their motion to intervene in the family court case in which the court decreed the equitable adoption of Deric Lee Coon ("Deric") by decedent, Patricia Walker. We affirm the denial of intervention.

## Background

Deric Coon is the six-year-old son of Christopher Coon. Deric's mother died when Deric was quite young. Christopher Coon subsequently invited Patricia Walker to live with him and Deric. Testimony was presented in the family court case to the effect that Patricia Walker was like a mother to Deric, and intended eventually to marry Christopher and to adopt Deric. Several years after Patricia moved in with Christopher and Deric, Patricia was killed while driving on an interstate highway when a steel counterweight allegedly fell out of a truck and struck her, causing fatal injuries.

Patricia Walker's father, Stephen Walker, brought a wrongful death action in Jackson County Circuit Court against the owner of the truck, American Compressed Steel, and the truck driver, William Copeland.

After Stephen Walker's wrongful death action was filed, Deric Coon filed a petition for "equitable adoption" in the Family Court Division of the Jackson County Circuit Court. The petition sought to have Deric posthumously "adopted" by the decedent so Deric could prosecute the wrongful death action as a plaintiff.[1] Deric's paternal grandparents and Stephen Walker were given notice of the proceeding. Following an evidentiary hearing, the family court entered a decree declaring Deric to be, "for all legal intents and purposes" the child of the decedent, Patricia Walker. The decree recites that Deric Coon is found to have been equitably adopted by the deceased "for all purposes, legal and equitable." Deric subsequently brought to the circuit court his "Verified Order in Recognition of Legal Adoption," which recites that he is "lawfully entitled to bring a wrongful death action relating to the death of his mother, Patricia Walker." The circuit court has, in accordance with this verified order, allowed Deric to

1. The wrongful death statute, section 537.080, RSMo 2000, allows the claim to be brought:
 (1) By the spouse or children or the surviving lineal descendants of any deceased children, natural or adopted, legitimate or illegitimate, or by the father or mother of the deceased, natural or adoptive;
 (2) If there by no persons in class (1) entitled to bring the action, then by the brother or sister of the deceased, or their descendants, who can establish his or her right to those damages set out in section 537.090 because of the death;
 (3) If there be no persons in class (1) or (2) entitled to bring the action, then by a plaintiff ad litem. Such plaintiff ad litem shall be appointed by the court having jurisdiction over the action for damages provided in this section upon application of some person entitled to share in the proceeds of such action. Such plaintiff ad litem shall be some suitable person competent to prosecute such action and whose appointment is requested on behalf of those persons entitled to share in the proceeds of such action. Such court may, in its discretion, require that such plaintiff ad litem give bond for the faithful performance of his duties.

become the plaintiff in the wrongful death action. Stephen Walker, who suffers from mental illness, has withdrawn from active participation and has permitted Deric to prosecute the action as the named plaintiff. Deric now, in his amended pleadings, alleges that he is the son of Patricia Walker.

American Compressed Steel and Copeland, and the trial court in the death case, were unaware of the adoption proceeding until Deric sought to import the decree to the wrongful death action. Defendants contended in the circuit court that they are not bound by the decree to acknowledge a legal parent-child relationship between Patricia and Deric. The defendants also filed a motion in the family court to "intervene out of time" in order to move to set aside the adoption decree. They sought intervention as a matter of right pursuant to Rule 52.12. The family court denied the motion. American Compressed Steel and Copeland appeal the denial by the family court of their motion to intervene and set aside the adoption decree.

## Motion to Dismiss

Deric has moved to dismiss this appeal, arguing the Appellants lack standing to challenge the judgment because they were not within the category of persons specified as entitled to notice and joinder under the procedures set forth in Chapter 453, RSMo 2000. As to that assertion, it should be noted that Chapter 453 authorizes and regulates adoptions. However, for reasons discussed more fully below, the decree in this case is not an adoption decree. *See, e.g., Goldberg v. Robertson,* 615 S.W.2d 59, 62 (Mo. banc 1981). Chapter 453, the only statutory authority for adoption, does not contemplate or provide for "equitable adoption." Thus, the fact that the statutory procedures in that chapter do not require joinder of appellants is somewhat beside the point.

The Respondents also move to dismiss the appeal on the ground that Appellants are not "aggrieved parties" under section 512.020. Respondents confuse the issue of whether a party is aggrieved by a judgment in a case with the issue of whether that party is aggrieved by the denial of intervention. The law is clear that even if they are not aggrieved as to the judgment itself, they may still be aggrieved as to the denial of intervention.

The denial of a motion to intervene under Rule 52.12(a) is a final judgment from which there is a right of appeal. *State ex rel. Reser v. Martin,* 576 S.W.2d 289, 291 (Mo. banc 1978). Both the Missouri and U.S. Supreme Courts have recognized that a movant is directly aggrieved by the denial of a non-permissive motion to intervene because there is "no other way in which he can better assert the particular interest which warrants intervention." *Id.* at 290. When a party claims intervention as a matter of right, they are asserting that they may be a legally bound or prejudiced by any judgment entered in the case. *Id.* Because the movant cannot challenge the judgment unless he is allowed to intervene, "the order denying intervention has the degree of definitiveness which supports appeal therefrom." *Id.* at 290–91. Even if the movant lacks standing to object to the judgment on the merits, his right of appeal rises from the denial of intervention motion. *Ring v. Metro. St. Louis Sewer Dist.,* 41 S.W.3d 487, 491 (Mo.App. E.D.2000). Appellants thus have standing to appeal the ruling denying their claim of legal rights under Rule 52.12(a). Deric's motion to dismiss the appeal is denied.

## Issues on Appeal

In their first point, Appellants argue the family court erroneously denied the motion to intervene as a matter of right because

the disposition of the family court proceeding, they fear, may impair or impede their ability to protect their corresponding financial interest in the wrongful death action. They say they wish to intervene in order to be allowed to move to set aside the purported equitable adoption decree. They are concerned because Respondent Coon asserts that the decree is an adoption decree and forecloses them from challenging whether Deric Coon is to be regarded as the son of the deceased.

The question under Rule 52.12(a), which deals with intervention as of right, is whether appellants have such a direct and substantial interest in the result of the family court proceeding that they were entitled to intervene. *See Estate of Langhorn v. Laws,* 905 S.W.2d 908 (Mo.App. 1995). The appellants cite *In re Adoption of H.M.C.,* 11 S.W.3d 81, 91 (Mo.App.2000), in which we stated that an "interested party" for the purpose of granting intervention as a matter of right is one that is concerned in the outcome or result thereof because it has a legal right that will be directly affected thereby or a legal liability that will be directly enlarged or diminished by the judgment or decree in such action. Appellants ignore the use of the word "directly" in the applicable authority. The question is whether there is any direct effect on the rights or liabilities of appellants in the family court proceeding. See *Lodigensky v. American States Preferred Ins. Co.,* 898 S.W.2d 661, 666 (Mo.App. 1995) (because appellant would not be bound by the result in the pending suit, appellant had no interest which would justify intervention).

**2.** The differences between an adoption and an "equitable adoption" are many, as discussed more fully *infra*. For instance, there is no provision in Chapter 453 for a posthumous adoption; whereas equitable adoption is posthumous in nature. *Goldberg,* 615 S.W.2d at 61–63. More importantly, an adoption is about the *status* of parent and child, while an "equitable adoption" is about a property right related to the deceased. *Id.* While the General Assembly regulates adoptions, it has never purported to regulate equitable adoptions. *See Id.* at 62.

## The Judgment

Respondent Coon refers in his brief to the decree as an equitable adoption decree.[2] The decree and the verified order in this case are written as though an equitable adoption is merely one form of adoption whereby the relationship of parent and child is established. It contains boilerplate language borrowed from adoption proceedings. The verified order recites that the decree is one of "legal" adoption. The decree itself, although stating it is a decree of equitable adoption, contains language asserting that Deric Coon is the child of the deceased "for *all* legal intents and purposes" (emphasis added). Thus, we commence this matter in the midst of a good deal of confusion about the nature of equitable adoption.

## Adoption

■■■ Adoption is purely a creature of statute. *See Menees v. Cowgill,* 359 Mo. 697, 223 S.W.2d 412, 415 (1949), *cert. denied,* 338 U.S. 949, 70 S.Ct. 488, 94 L.Ed. 585 (1950). There was no right of adoption under the common law of England. 2 AM.JUR.2d, Adoption, § 7 (1994). The universal rule in all states is that the power to create the relationship of parent and child between persons not so related exists only by virtue of statutory authority. *Id.* There is no statutory authority for any adoption other than Chapter 453. *Engel v. Kenner,* 926 S.W.2d 472 (Mo.App.1996).

## Equitable Adoption

■■■ However, notwithstanding that an adoption can be achieved only pursuant

to statute, Missouri has recognized "equitable adoption" as a judicial remedy in equity. *Drake v. Drake,* 328 Mo. 966, 43 S.W.2d 556, 558 (banc 1931); *Menees,* 223 S.W.2d at 415; *Goldberg v. Robertson,* 615 S.W.2d 59, 62 (Mo. banc 1981). A court of equity may, where justice requires, decree a person to have rights of an adopted child for purposes of inheritance. *Drake,* 43 S.W.2d at 558. Equitable adoption, also called "adoption by estoppel," is not an adoption. It does not create the legal relationship of parent and child. *Goldberg,* 615 S.W.2d at 62. It arose out of contract enforcement. *Drake,* 43 S.W.2d at 558. The purpose of the doctrine of equitable adoption was to avoid unjust results from the application of intestacy statutes where there had been a contract to adopt. 2 AM JUR.2d Adoption § 53 (1994). "Being only an equitable remedy to enforce a contract right, it is not intended or applied to create the legal relationship of parent and child, with all the legal consequences of such relationship, nor is it meant to create a legal adoption." *Id.* The need for the doctrine arises when proposed adoptive parents die intestate without ever having conducted a formal adoption. *Id.* The doctrine is invoked to allow the "supposed-to-have been adopted child" to take an intestate share. *Id.*

**Not a Matter of Parent–Child Status**

■ While an adoption is effective for all purposes, an equitable adoption decreed by a court of equity addresses only the particular property right in question in the proceeding and does not address the status of the parent-child relationship. *Long v. Willey,* 391 S.W.2d 301, 306 (Mo.1965). The doctrine of equitable adoption has, in some jurisdictions, been recognized by statute. 2 AM.JUR.2d, Adoption, § 53 (1994). The doctrine has also been explicitly rejected in many jurisdictions. *Id.* Missouri has long recognized the concept,

but has also maintained a clear distinction of the concept from adoption. *See, e.g., Drake,* 43 S.W.2d at 558–59; *Niehaus v. Madden,* 348 Mo. 770, 155 S.W.2d 141, 144 (1941); *Engel,* 926 S.W.2d at 475.

■ An adoption is an action *in rem,* which is binding on the whole world and entitles the adoptee to all the rights tied to the status of legal adoption. *Goldberg,* 615 S.W.2d at 63. An *equitable* adoption, in contrast, is a result of an *in personam* proceeding binding only on the parties to the action in which it is conducted and those in privity with them. *Id.* "Equity acts only against specific individuals and, in such case, one person may be bound and not another." *Menees,* 223 S.W.2d at 418.

■ An equitable adoption is not pursued as an independent cause of action related to status, but is a proceeding brought in connection with a claim to a particular property right. *See Long v. Willey,* 391 S.W.2d 301, 306 (Mo.1965); *Goldberg,* 615 S.W.2d at 62. Thus, when a child seeks to be declared an equitable adoptee of a deceased person for inheritance purposes, the proceeding generally is brought in the court having jurisdiction of the deceased's estate or of the disputed property, and is an ancillary part of the proceedings to administer the estate or adjudicate property rights. *E.g., Drake, supra; Long, supra.* "Equitable adoption is a principle and rule of equity only." *Rich v. Baer,* 361 Mo. 1048, 238 S.W.2d 408, 411 (1951). The decree does not bind others who were not a party to the proceeding. *Menees,* 223 S.W.2d at 418.

**Holt v. Burlington Northern**

This court broke new ground in applying the concept of equitable adoption in a tort context in *Holt v. Burlington Northern,* 685 S.W.2d 851 (Mo.App.1984). In that

case, Ann Holt died as a result of the alleged negligence of the railroad. Her nephew, James Holt, a 13–year–old, had resided with her from birth and had been raised by her as his mother. Because of the relationship, the probate court had earlier held that the thirteen-year-old James Holt was entitled to inherit the estate of the deceased Ann Holt. *Id.* at 882. James Holt then brought an action under the wrongful death act against the railroad. The trial court awarded summary judgment, holding that the plaintiff was not a person within the class of beneficiaries entitled to bring a wrongful death action for the death of Ann Holt. *Id.*

This court noted in *Holt* that the Missouri Supreme Court had stated in *O'Grady v. Brown*, 654 S.W.2d 904, 911 (Mo. banc 1983), that the wrongful death act was remedial and should be broadly construed to effectuate its purposes. *Id.* at 855. The court in *Holt* addressed one point: whether the trial court erred in automatically dismissing plaintiff from the proceedings without granting him standing to sue. *Id.* at 852. All parties in *Holt* accepted the probate determination of equitable adoption as valid. Further, there was apparently no dispute as to the facts of the relationship between James and Ann Holt.[3]

This court in *Holt* held that the wrongful death statute allowed the prosecution of a wrongful death claim by a child who,

though not the natural child of the deceased and not adopted by the deceased, had been declared to be entitled to inherit from the deceased as an equitable adoptee. In view of the acknowledged bond between Ann and James Holt, and in view of the acknowledged validity of the probate court decree as to inheritance rights, the court reasoned that the statutory purposes would be fulfilled by allowing Ann Holt's nephew James Holt to prosecute the death action for the loss of his relationship with his aunt. The court thus applied the previously recognized equitable adoption in the tort context of the statutory death action.[4]

In cases since *Holt*, the party claiming equitable adoption for wrongful death purposes has sometimes sought such a determination in the wrongful death proceeding itself without having first obtained a declaration of inheritance rights in the probate court. *See, e.g., Taylor v. Gen. Motors Corp.*, 715 S.W.2d 925 (Mo.1986); *Birdwell v. Phillips*, 805 S.W.2d 220 (Mo.App.1991); *Halterman v. Halterman*, 867 S.W.2d 559 (Mo.App.1993). In other cases, a party claiming equitable adoption has sought such a determination in a declaratory judgment proceeding. *E.g., Niehaus v. Madden*, 348 Mo. 770, 155 S.W.2d 141 (1941); *Bellinger v. Boatmen's Bank*, 779 S.W.2d 647 (Mo.App.1989); *Weidner v. American Family Mutual Ins. Co.*, 928 S.W.2d 401 (Mo.App.1996).

**3.** Appellants here challenge the validity of the decree of equitable adoption, contending that the evidence presented in the family court did not comply with judicial requirements for an equitable adoption. Further, they argue that the family court had no free-standing jurisdiction, as to equitable adoption proceedings, but that any equitable adoption proceedings must be filed in the wrongful death case itself.

**4.** Although *Holt* is a unique case, a similar result under a statute with different wording was reached in *Bower v. Landa*, 78 Nev. 246,

371 P.2d 657 (1962), in which a child, who had been declared the sole heir for inheritance purposes by equitable adoption, was allowed to bring a death action because the wrongful death statute gave standing to "heirs" to bring suit. Other authorities have rejected the notion that equitable adoptees can qualify under their statutes. *E.g., Smith v. Atlantic Coast Line R. Co.*, 212 S.C. 332, 47 S.E.2d 725 (1948); *Weems v. Saul*, 52 Ga. App. 470, 183 S.E. 661 (1936).

To make an equitable adoption effective as a matter of *legal status* would, the Supreme Court has stated, result in making equitable adoption a form of adoption. *Long v. Willey*, 391 S.W.2d 301, 304 (Mo. 1965). This, says the Court, is something the judiciary has no power to do. *Id.*; *Goldberg v. Robertson*, 615 S.W.2d 59, 62. Accordingly, the Supreme Court in *Long* reversed a decree of equitable adoption to the extent that it purported to go beyond merely declaring the plaintiff an heir of the deceased couple for inheritance purposes. *Long*, 391 S.W.2d at 304.

 The case before us is the first case known to us in which a party who has not been declared an equitable adoptee for inheritance purposes has filed a declaratory action to seek a decree of posthumous adoption for wrongful death purposes without joining the wrongful death defendants. Respondent Coon argues that his decree is binding on the appellants, and he assumes that an equitable adoption is like an adoption in the sense that the wrongful death defendants are legally bound to acknowledge him as the "son" of the deceased. Neither *Holt* nor any other authority, however, has so declared. James Holt was allowed *standing* to sue for the loss of his aunt, with whom he had a close bond, because of the probate court declaration of equitable adoption for inheritance purposes. The wrongful death defendant in that case, however, was not required to acknowledge James Holt as the "son" of the deceased. This is evident in that the court stated that it would be permitted to show at trial that James Holt's natural mother was still living, and that James Holt began residing with her after his aunt's death. *Holt*, 685 S.W.2d at 857.

Here, there is no probate court decree of equitable adoption establishing Deric Coon as entitled to inherit from Patricia Walker. The family court decree in this case, which is a *de facto* declaratory judgment action, vests Deric, as between Deric and Stephen Walker, with standing to bring the action. Such proceeding is binding on the participants. See *State ex rel City of Crestwood v. Lohman*, 895 S.W.2d 22,30 (Mo.App.1994).

### Jurisdiction of Family Court

 Appellants argue that the family court had no jurisdiction to enter such a decree and the ruling is therefore void. Appellants base that argument on the principle that equitable adoptions are generally ancillary to some property right and are not about status as adopted child. In response, Respondent Coon argues, based on the language of section 487.080, that the family court not only had jurisdiction, but it had *exclusive* jurisdiction of the equitable adoption proceeding. We conclude that neither party is entirely accurate.

 Section 487.080, enacted in 1993 as part of the creation of the family court, recites that the family court shall have "exclusive original jurisdiction" to hear and determine "[a]doption actions and all actions and proceedings conducted pursuant to the provisions of chapter 453 RSMo." From 1917 until the recent creation of the "family court" concept, exclusive jurisdiction over the adoption of children was vested by the legislature in the juvenile division of the circuit court. S.B. 313, Laws of Mo.1917, p. 193; *Engel*, 926 S.W.2d at 474. We find no authority that any proceeding involving an *equitable* adoption was ever conducted in juvenile court or family court. Equitable adoptions are not conducted "pursuant to the provisions of Chapter 453" because they are a creation of equity, as we have noted. *Goldberg*, 615 S.W.2d at 62; *Long*, 391 S.W.2d at 304-05. Accordingly, an equitable adoption cannot be understood to be an "adoption action." *Id.* Thus, we disagree

with Respondent's assertion that the family court has exclusive jurisdiction of such a declaratory proceeding.

■ At the same time, appellants fail to persuade us that the family court had no jurisdiction over the proceeding in question and that they accordingly need to intervene to move to set the judgment aside. The statutes do not limit family court jurisdiction to the matters described in 487.080;[5] neither do appellants argue that it is so limited. Therefore, we are not persuaded that Stephen Walker and Deric Coon could not, as they did, go to court to obtain a declaration that, *as between them,* Deric is entitled to be treated as the equitable adoptee of the deceased for purposes of the wrongful death action.

We agree with Respondent Coon that the death case defendants, the alleged tortfeasors, have only a contingent interest in the identity of the party having presumptive standing to file the death case. Not having been invited in, the wrongful death defendants were not entitled to force their way into this proceeding. *See* Rule 52.12(a); *Estate of Langhorn v. Laws,* 905 S.W.2d 908, 911 (Mo.App.1995) (intervention not permitted where the interest claimed was not "such an immediate and direct claim upon the very subject matter of the action that [proposed intervenors] will either gain or lose by the direct operation of the judgment that may be rendered in the action in which intervention is sought"). We cannot say, under established principles of law, that the family court judgment has a direct effect on appellants' potential liability. The appellants, of course, will have their own oppor-

tunity to address the equitable adoption issues in question in the death case.

## Conclusion

For all of the foregoing reasons, the trial court did not err in denying intervention.[6] Judgment affirmed.

ULRICH and HARDWICK, JJ., concur.

---

5. See Sections 487.120 and 487.130 concerning the contemplation of overlapping jurisdiction between the family court division and other divisions of the circuit court.

6. It is unnecessary for us to address the allegations of appellants' Point III (dealing with the sufficiency of the evidence in the family court to support the judgment). Point IV (dealing with claimed due process rights) is also rendered moot by our determination herein concerning the claimed right of intervention.